## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ASAPP HEALTHCARE, INC., | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 18-4012 |
| v. | : | **OPINION** |
| LILLIAN SERRANO, GEORGE WORRELL, LINDA SOUZA, and ALLIED BEHAVIORAL HEALTH d/b/a ABC THERAPY SERVICES, | : : | |
| Defendants. | : | |

This matter comes before the Court on Defendants' Motion to Dismiss the Complaint or in the Alternative for Summary Judgment [Dkt. No. 20], which the Court converted, pursuant to Rule 56(f), to a Motion for Summary Judgment [Dkt. No. 27]. The Court has considered the written submissions of the parties pursuant to Fed. R. Civ. P. 78 (b). For the reasons stated below, Defendants' Motion [Dkt. No. 20] will be granted.

### I.    Background

This case arises out of the ongoing complex business disputes between Plaintiff, ASAPP Healthcare, Inc. ("Plaintiff" or "ASAPP")—a non-profit company providing "behavioral health counseling services to at-risk youth"—its former employees, Lilian Serrano ("Serrano"), George Worrell ("Worrell"), and Linda Souza ("Souza"); and Allied Behavioral Healthcare Services, Inc. ("ABC Therapy"), the company established by the individual defendants (Collectively "Defendants"). [Dkt. No. 1 ("Compl.") ¶24].

### A. The Current Complaint

Plaintiff filed a Complaint against Defendants on March 22, 2018, based on their alleged "concerted and unlawful scheme to usurp, plunder, and raid ASAPP's employees

and independent contractors and, ultimately, its client base and business." (Id. at ¶ 1). The complaint asserts, *inter alia*, that Defendants' wrongfully interfered with ASAPP and misappropriated its confidential and proprietary business information. In particular, it alleges that together, Worrell, Souza, and Serrano, accessed protected computers, disclosed trade secrets, and solicited former ASAPP employees and independent contractors. (Id. at ¶¶3-5). In addition, ASAPP claims that "Defendant Souza contacted Verizon in an attempt to transfer the ASAPP phone numbers assigned to her and Worrell from ASAPP's corporate account to her personal account;" and that "Defendant Worrell had been disconnecting and removing his ASAPP computer from ASAPP's office" and "failed to return his ASAPP computer." (Id. at ¶¶ 40-55).

Based on these actions, ASAPP asserts sixteen (16) counts for: violation of the Computer Fraud and Abuse Act (Count I), Conspiracy to Violate the Computer Fraud and Abuse Act (Count II), violation of the New Jersey Computer Related Offenses Act (Count III), Conspiracy to Violate the New Jersey Computer Related Offenses Act (Count IV), violation of the Electronic Communications Privacy Act (Count V), Civil Violation of the New Jersey Wiretapping and Electronic Surveillance Control Act (Count VI), violation of the Stored Communications Act (Count VII), violation of the New Jersey Wiretapping and Electronic Surveillance Control Act (Count VIII), violation of the New Jersey Trade Secrets Act (Count IX), Tortious Interference with Prospective Economic Advantage/Contractual Relations (Count X), Misappropriation of Confidential Information (Count XI), Conversion (Count XII), Unfair Competition (Count XIII), Unjust enrichment (Count XIV), Breach of the Duty of Loyalty (Count XV), and Civil Conspiracy (Count XVI).

Defendants moved to dismiss the Complaint, or in the alternative for summary judgment, based on three arguments: (1) ASAPP's claims are barred by res judicata and settlement and release; (2) ASAPP's claims are barred by the entire controversy doctrine and Federal Rule of Civil Procedure 13(a); and (3) even if ASAPP's claims are not barred, ASAPP's federal claims fail under either Rule 12(b)(6) or Rule 56. [See generally Dkt. Nos. 20, 34].

### B. History of the Disputes between Worrell, Souza, and CEO of Plaintiff ASAPP

Considering the arguments before the Court, the previous disputes between Worrell, Souza, and the CEO of ASAPP, Prajakta Harshe ("Harshe"), are relevant to the present motion.

Defendants Worrell and Souza initially filed a lawsuit against Harshe in federal court on April 28, 2016, alleging libel and slander, and violations of the Electronic Communications Protection Act and Stored Communications Act ("Worrell I").[1] [Dkt. No. 34-1, Defendants' Rule 56.1 Statement of Facts ("Def. SMF") ¶ 1]. The complaint asserted that Worrell, Souza, and Harshe were associated in a number of entities, and due to "fundamental disagreements over the operation of the businesses," demanded mediation. (Id. at ¶2). Worrell, Souza, and Harshe were all employees of ASAPP and had ownership interests in the following entities: Rehabilitative Adolescent Programs, LLC ("RAP"), Amethyst Personal Growth & Counseling Services, LLC ("Amethyst"), PGL Associates, LLC ("PGL"), and Atlantacare Behavioral Health ("Atlantacare"). RAP provides the management services to ASAPP, and PGL owns the building ASAPP operates out of. [Dkt. No. 20-7 ¶¶ 8-11; Pl. SMF ¶¶ 6-7].

---

[1] Worrell et. al v. Harshe, Docket No. 1:16-cv-02398-NLH-KMW.

On May 2, 2016, the parties and their respective counsel attended a mediation session before the Honorable Michael Winkelstein, J.A.D. (Ret.). At the end of this mediation session, a handwritten mediation agreement was drafted and signed by Worrell, Souza, and Harshe (the "Mediation Agreement").

The Mediation Agreement states:

The parties hereby agree to the following:

1. All ownership in ASAPP, RAP, Amethyst, PGL shall be transferred from Worrell and Souza to Harshe-Pathkar ("Praj").

2. Praj or the entities will pay to Worrell and Souza pursuant to their percentage interests 1.25 million dollars, payable with $250,000 at signing and $100,000 for each of the next ten months. Praj will personally guarantee the payments.

3. Praj will refinance building, mortgage or otherwise cause Souza and Worell to be released from any obligations and pay Worrell and Souza their equity interest in the property.

4. Praj will pay to Worrell and Souza their outstanding salary through date of termination and outstanding quarterly distribution ($148,000).

5. Worrell and Souza will dismiss federal lawsuit.

6. Worrell and Souza will return to Praj all corporate codes, passwords, files, email addresses less any personal information therein contained, to the extent possible by May 6, 2016.

7. Parties agree not to disparage each other to any third party or entity or agency of any government.

8. Praj will represent she has not and will not in any way attempt to interfere with Worrell and Souza's attempts to obtain a Medicaid number.

9. Parties agree to confidentiality.

10. Praj will not tortuously interfere with Worrell's and Souza's relationship with Lillian Serano.

11. There is no non-compete nor non-solicitation agreement between or among any of the parties.

12. Parties will execute mutual releases.

13. Parties will split in two the Mediator's fee.

14. Counsel for parties will prepare a final settlement agreement [and] release based on these terms.

[Dkt. No. 20-5, Ex. C ("Mediation Agreement")]. Pursuant to the Mediation Agreement, counsel for the parties drafted a formal settlement agreement, and set a closing date. [Dkt. No. 20-6, Ex. D]. According to Plaintiff, "for a host of reasons, including its improper overbreadth and fraud by defendants Worrell and Souza, the draft was never signed by anyone, and Ms. Harshe expressly rejected it." [Dkt. No. 37-1, Pl. Response to Def. SMF ("Pl. Resp.") ¶ 6]. Thereafter, the parties attended a second mediation session on May 20, 2016, to try and resolve their issues. (Id.).

That same day, Worrell and Souza moved to enforce the Settlement Agreement against Harshe, and on June 13, 2016, Harshe moved to dismiss the Worrell I complaint. Worrell and Souza subsequently filed an amended complaint. [Dkt. No. 20-3]. The amended complaint alleged that Harshe violated the Electronic Communications Protection Act ("ECPA"), New Jersey Identity Theft Statute, and Stored Communications Act ("SCA") by interspersing the account information for Worrell and Souza's yahoo account without authorization to access their email history and generate emails. The amended complaint further alleged that Harshe committed libel and slander when Harshe told a bank that plaintiffs had stolen things or monies from "the company," told Serrano plaintiffs embezzled funds, and told the Hammonton Police that plaintiffs were guilty of vandalism, conversion, and theft. Finally, the amended complaint claimed that Harshe deactivated the plaintiffs' Verizon phones and "switched the phone numbers to her own iphones" in further violation of the New Jersey Identity

Theft Statute. [See generally Dkt. No. 20-9, Worrell I's First Amended Complaint].

Harshe moved to dismiss the amended complaint. The Court then directed the parties to

participate in further mediation, which they did on December 16, 2016. (Pl. Resp. ¶ 6).

On January 13, 2016, Harshe filed a supplemental brief in opposition to the then-

pending motion to enforce settlement. In her declaration, Harshe stated that she is the

CEO of ASAPP, that ASAPP is a non-profit, and that Worrell and Souza were employees

of ASAPP. Harshe admitted that the mediation on May 2, 2016 was the parties' attempt

to resolve the "outstanding business dispute and to terminate [their] existing

partnership in various entities." [Dkt. No. 20-7, ¶ 7]. She then claimed that she learned

Worrell, Souza, and Serrano formed "a competing company" ABC Therapy, that Worrell

"had been disabling security cameras at night and removing corporate equipment and

files and that [Souza] had transferred two of the corporate cell phone numbers to her

personal account." (Id. at ¶¶ 3-4).

In her declaration, Harshe further claimed that:

- Immediately after the mediation, she discovered that Worrell and Souza had taken ASAPP corporate property and destroyed corporate records, "crippling business operations and irreparably damaging the non-profit company." (Id. at ¶ 17).

- "[W]hile Mr. Worrell and Ms. Souza were employed by ASAPP they had solicited employees of ASAPP and independent contractors who worked for ASAPP, RAP, and Amethyst." (Id. at ¶ 23).

- Worrell had "misallocated tens of thousands of dollars to the detriment of the 'non-profit corporation, ASAPP, and for his own benefit." (Id. at ¶ 25).

- "October 28, 2016, Mr. Worrell disabled the domain for ASAPPHealthcare.org, taking down both the corporate website and all corporate emails. He disabled the domain for ten days, causing substantial hardship and economic loss to both ASAPP and to me personally." (Id. at ¶ 26).

The Honorable Noel L. Hillman dismissed Worrell and Souza's motion to enforce settlement for lack of jurisdiction, on February 28, 2017. (Def. SMF. ¶ 16). Shortly thereafter, Judge Hillman also denied Harshe's motion to dismiss the amended complaint. (Id. at ¶ 17). On May 2, 2017, Harshe filed an Answer to the amended complaint. (Id. at ¶19). The Answer did not include any counterclaims.[Dkt. No. 20-10, Ex. H]. Following these rulings, Worrell and Souza moved to withdraw their complaint, and dismiss their claims against Harshe with prejudice. At the same time, they commenced a second action against Harshe in the Superior Court of New Jersey, Atlantic County, to enforce settlement ("Worrell II"). [Dkt. No. 20-11, Ex. I, Worrell II Complaint]. The motion to withdraw Worrell I was granted and the case was closed on October 5, 2017. [See Dkt. No. 20-3].

Worrell II, filed in March 2017, "arose while the parties were negotiating to resolve their ongoing business dispute concerning certain entities known as ASAPP, RAP, Amethyst and PGL." (Worrell II Complaint at ¶ 4 (emphasis added)). Initially, the state court in Worrell II enforced the Mediation Agreement. (Def. SMF ¶¶ 22-24). On "May 21, 2018, after motion practice and several hearings, the state court reversed and vacated any and all prior rulings that might have suggested that there was an enforceable mediation agreement between Ms. Harshe and defendants Worrell and Souza." (Pl. SMF ¶ 50). This ruling allowed the parties to conduct discovery and prepare for trial. (Def. SMF ¶ 29).

Thereafter, Plaintiff ASAPP initiated the present suit on March 22, 2018. [Dkt. No. 1]. While Worrell III was pending, Worrell and Souza moved for summary judgment in Worrell II. On August 21, 2020, the Honorable Judge John C. Porto granted that

motion, holding that Worrell, Souza, and Harshe reached a binding agreement at the May Mediation, and enforced the relevant Mediation Agreement.

**C. Order to Show Cause**

Having been informed that Judge Porto issued an opinion and order enforcing the Mediation Agreement, this Court issued an Order to Show Cause, requiring Plaintiff to provide the effect of the Mediation Agreement on this matter.[2] [Dkt. No. 55]. Plaintiff responded to the Order simply arguing that the Mediation Agreement has no bearing on the present action, because Plaintiff ASAPP was not a party to that Agreement. [Dkt. No. 74]. Defendants' filed a response, maintaining their position that the agreement forecloses this action entirely, to which Plaintiff replied that ASAPP is a non-party and "defendants' reliance on the Mediation Agreement here is further misplaced as much of the wrongdoing alleged in ASAPP's complaint was not discovered—and in many cases did not even occur—until after the May 2, 2016 Worrell/Souza/Harshe Mediation Agreement." [Dkt. Nos. 75, 76].

II.     Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 ( 1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will

---

[2] The Court notes that while both Worrell II and III were pending simultaneously, this Court directed the parties to appear for oral argument, so as to develop a full and informed record—considering the lack of information this Court had pertaining to the State Court Action. At the parties own requests, and then for reasons related to the ongoing Covid-19 Pandemic, the argument was adjourned numerous times. Ultimately, the State Court rendered a decision and this Court entered an Order to Show Cause.

enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256–57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.  Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d. Cir. 1992).

III.    Analysis

For the reasons that follow, this Court finds that the Mediation Agreement, the principles of res judicata, and Federal Rule of Civil Procedure 13(a), preclude Plaintiff's claims against all Defendants.

The doctrine of claim preclusion, or res judicata, prohibits a plaintiff from re-litigating the same claim against the same parties, provided the claims have previously been fairly litigated and determined. First Union Nat'l Bank v. Penn Salem Marina, Inc., 921 A.2d 417, 423 (N.J. 2007); In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008). "A party seeking to invoke res judicata must establish three elements: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" Duhaney v. Attorney Gen. of U.S., 621 F.3d 340, 347 (3d Cir. 2010) (quoting In re Mullarkey, 536 F.3d at 225).

In this case, the prior suit at issue is Worrell I—the federal court action involving Worrell, Souza, and Harshe. Worrell I involved a final judgment on the merits. For purposes of res judicata, "judgment on the merits" is a "term of art . . . it does not require an actual verdict or summary judgment . . . ." Papera v. Pennsylvania Quarried Bluestone Co., 948 F.3d 607, 610 (3d Cir. 2020) (citing Fed. R. Civ. P. 41(b) and Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 502, 121 S. Ct. 1021, 1025, 149 L. Ed. 2d 32 (2001)).  In Worrell I, Worrell and Souza filed a motion to withdraw their federal

10

complaint, which the court ultimately granted. In granting that motion, the court dismissed the action <u>with prejudice</u>. [<u>See</u> Dkt. No. 20-3].

Generally, "a prior dismissal with prejudice (whether voluntary or involuntary) precludes later relitigating the dismissed claims." <u>Papera v. Pennsylvania Quarried Bluestone Co.</u>, 948 F.3d 607, 610 (3d Cir. 2020) (explaining that a dismissal with prejudice "operates as an adjudication on the merits, so it ordinarily precludes future claims." (quoting <u>Landon v. Hunt</u>, 977 F.2d 829, 832–33 (3d Cir. 1992))). ASAPP, however, contends that there was no final judgment. It asserts that "defendants Worrell and Souza abruptly abandoned and terminated the federal case (over [Harshe's] objections) after just a few months before the claims there could be litigated or anything else substantive could be done, including the addition of any good faith counterclaims or the impleader of any additional parties, had that arguably even been appropriate." [Dkt. No. 30, p. 18 of 26]. The record before the Court proves otherwise. In fact, Harshe submitted a declaration in <u>Worrell I</u>, on January 13, 2017, providing similar, if not identical, allegations presently before this Court. [<u>See</u> Dkt. No. 20-7 (stating *inter alia* that Worrell and Souza took ASAPP property, destroyed records, solicited employees of ASAPP and independent contractors, enticed the staff to transition to their new company, ABC Therapy, and disabled the ASAPP domain "causing substantial hardship and economic loss to both ASAPP and to [Harshe] personally")]. ASAPP's Complaint further demonstrates that Harshe was aware of the alleged wrongdoings at some point in 2016, and well before the dismissal of <u>Worrell I</u>, on October 5, 2017. (<u>See e.g</u>, Compl. ¶¶ 53-55, 57, 59, 61).

Even if the judgment in <u>Worrell I</u> alone was not "final," that judgment in conjunction with the Mediation Agreement constitutes a final judgment on the merits.

11

In Worrell I, the parties engaged in mediation, which resulted in an executed Mediation Agreement. Worrell and Souza sought enforcement of that Agreement in Worrell II and succeeded. The state court in Worrell II held, "the parties negotiated and agreed to a binding mediation agreement that settled their dispute," and found that the Mediation Agreement "resolved the federal court action [Worrell I]." [Dkt. No. 53, pp. 9, 5 of the Memorandum of Decision]. To be sure, the Mediation Agreement states, "Worrell and Souza will dismiss federal lawsuit." [Mediation Agreement ¶ 5].

"When a prior case has been adjudicated in a state court, federal courts are required by 28 U.S.C. § 1738 to give full faith and credit to the state judgment." Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993) (citations omitted).[3] Thus, it is established that the parties Mediation Agreement is binding, and their disputes settled. [Dkt. No. 53]. The Third Circuit has held that settlement can bar later actions when the district court terminates the action with prejudice. Nobel v. Morchesky, 697 F.2d 97, 102 n. 8 (3d Cir. 1982); see also Toscano v. Connecticut Gen. Life Ins. Co., 288 F. App'x 36, 38 (3d Cir. 2008) ("Judicially approved settlement agreements are considered final judgments on the merits for the purposes of claim preclusion."); Covington v. Equifax Info. Servs., Inc., No. 18-15640, 2019 WL 4254375, at *5 (D.N.J. Sept. 9, 2019).

Notwithstanding, Plaintiff argues that there is no preclusion because Worrell I and the Mediation did not involve the same parties. [See Dkt. No. 74]. There is no

---

[3] Though the State Court action was pending simultaneously with this matter, "federal cases recognize the general rule that as between actions pending at the same time, res judicata attaches to the first judgment regardless of the sequence in which the actions were commenced." 18 C. Wright A. Miller & E. Cooper, Fed. Prac. & Proc. Juris. § 4404 (3d ed. 2020); see also U.S. ex rel. Sheldon v. Kettering Health Network, 816 F.3d 399, 416 (6th Cir. 2016) ("[T]he relevant inquiry for res judicata is which action resulted in judgment first, not which action was filed first.").

dispute that this action involves a number of different parties—ASAPP, ABC Therapy, and Serrano were not parties in Worrell I. Defendants, however, argue that privity exists. Both Defendants and Plaintiff acknowledge that res judicata applies to non-parties in privity with those named in the first litigation, and focus almost exclusively on whether there is privity between Harshe and ASAPP. To that end, Plaintiff stresses that it cannot be in privity with Harshe because ASAPP, as a non-profit company, "is not—and cannot be – owned or controlled by any one person, including its CEO or any of its employees." [Dkt. No. 23, p. 22 of 38]. The Court disagrees.

Privity requires "a prior legal or representative relationship between a party to the prior action and the nonparty against whom estoppel is asserted;" and thus, exists when the non-party 'adequately represented by someone with the same interests who [wa]s a party.' " Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 312 (3d Cir. 2009). Essentially, privity is "a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata." Marran v. Marran, 376 F.3d 143, 151 (3d Cir. 2004) (quoting EEOC v. United States Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990))

Here, the admissions of Ms. Harshe and ASAPP alone demonstrate the close relationship Harshe has to the non-profit ASAPP. In Worrell II, Harshe acknowledged that ASAPP brings the pending causes of action (Worrell III) "through Ms. Harshe as the CEO." [Dkt. No. 20-16, Ex. N, p. 12]. The Complaint in this case alleges that Harshe: (1) incorporated ASAPP; (2) sits as its CEO (since 2007); (3) "has held the Medicaid ID number under which ASAPP provides children and adolescents with emotional and behavioral counseling services . . ."; (4) was ASAPP's initial registered agent and the sole member of its board of directors; and (5) was an original board trustee. (Compl. ¶¶ 24-

27). To be sure, as Defendants point out, ASAPP's Complaint mentions Harshe at least thirty (30) times. (See generally Id.). Notably, the Complaint further indicates that it was Ms. Harshe who "purchased two Dell computers for Defendants Worrell and Souza to use in connection with their full-time employment with ASAPP", "[c]oncerned about the integrity of ASAPP's business" logged into the ASAPP corporate email accounts, reviewed ASAPP's security footage, and filed fraud claims with Verizon after alleged changes to ASAPP's corporate account. (Compl. ¶¶ 48-52 (emphasis added)).

This record shows that the interests of Harshe and ASAPP are aligned. Indeed, Harshe personally brought the facts underlying her present claims to the attention of the Worrell I Court, in opposition to the enforcement of the Mediation Agreement. [See Dkt. No. 20-7 (noting that Defendants' action caused "substantial hardship and economic loss to both ASAPP and to [Harshe] personally")]. Regardless of ASAPP's status as a non-profit, the relationship between Harshe and ASAPP is close enough for res judicata purposes. See Goel v. Heller, 667 F. Supp. 144, 151 n.7 (D.N.J. 1987) ("[T]he question of privity does turn on the status of certain individuals and entities—questions of fact—the question of privity is really one of law."); Wood v. Borough of Lawnside, No. CIV. 08-2914, 2009 WL 3152114, at *3 (D.N.J. Sept. 28, 2009) (finding privity between a New Jersey non-profit organization and member of that non-profit). Therefore, the Court finds privity between Harshe and ASAPP.

Similarly, there is privity between Defendants Worrell and Souza—named in Worrell I—and their company, ABC Therapy. Worrell and Souza had established ABC therapy at the time Worrell I commenced, an event contemplated by the Mediation Agreement between the parties. (Mediation Agreement ¶ 11). Defendant Serrano also established ABC Therapy, along with Worrell and Souza. To the extent that she is also in

privity, Defendants submit that the "broadly worded release" of the settlement agreement provided that "Ms. Harshe, ASAPP, RAP, PGL, Amethyst, and Atlanta Cares were releasing Ms. Souza, Mr. Worrell, and any associated entity (which would include Allied and by extension Ms. Serrano) from any claims and causes of action." [Dkt No. 20-1, pp. 32-33 of 57]. This settlement agreement was not executed.

The Court, however, will not ignore the unique facts of this case, in which Worrell and Souza are intertwined with Serrano, who was also an employee of ASAPP. Together, Serrano, Worrell, and Souza are the trustees of ABC Therapy. (Complaint ¶ 45). ASAPP's Complaint alleges no claims against Serrano individually. Instead, it refers to Serrano's involvement in any alleged wrongdoing as part of a "scheme" or "conspiracy" with Worrell and Souza. (See generally Compl.); Goel v. Heller, 667 F. Supp. 144, 152 (D.N.J. 1987) ("[C]o-conspirators are by definition in privity"). Even when the Complaint attempts to separate "Serrano's Actions," it states Serrano acted "with the help of Worrell and Souza." (Id. at ¶ 210). Finally, the binding Mediation Agreement provides that Harshe would "not tortuously interfere with Worrell's and Souza's relationship with Lillian Serrano," calls for the execution of mutual releases, and states that "Counsel for parties will prepare a final settlement agreement [and] release based on th[ose] terms." (Mediation Agreement ¶¶ 10, 12, 14 (emphasis added)).

The term "privity" is used merely as "a way to express the conclusion that nonparty preclusion is appropriate on any ground." Salerno v. Corzine, 449 F. App'x 118, 122 (3d Cir. 2011) (quoting Taylor v. Sturgell, 553 U.S. 880, 894 n. 8, 128 S. Ct. 2161, 171 L.Ed.2d 155 (2008)). Accordingly, this Court finds that the relationship between Serrano, Worrell and Souza, is enough to afford Serrano the benefit of claim preclusion. Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 966 (3d Cir. 1991) ("We note

that a lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a later action."). To hold otherwise would impede a fair result by allowing Harshe (through ASAPP) to potentially recover damages against Serrano, based on the actions of Worrell, Souza and ABC Therapy.

Therefore, the only remaining question for the Court is whether this present action is based on the same "cause of action" as Worrell I. The Court finds that this element is met. "A single cause of action may comprise claims under a number of different statutory and common law grounds. Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims, although a clear definition of that requisite similarity has proven elusive." Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp., 688 F.2d 166, 171 (3d Cir. 1982) (citations omitted). Under the Third Circuit's "broad view," the following factors are relevant in assessing whether there is a "single cause of action:"

> 1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

United States v. Athlone Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984) (citations omitted); Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 277 (3d Cir. 2014). Importantly, "res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." Duhaney, 621 F.3d at 347.

Generally, this matter arises out of the same fundamental dispute in <u>Worrell I</u>, the same dispute that led to mediation—the deteriorating business relationship between Worrell, Souza, and Harshe. (<u>Worrell I</u> Amended Compl. ¶ 7). In particular, the claims in this matter rely on the same underlying events and facts giving rise to those at issue in <u>Worrell I</u>.

The complaint here provides that "Worrell and Souza rerouted ASAPP corporate email accounts, ASAPP corporate electronic facsimile ("eFax") numbers, and ASAPP corporate telephone numbers in order to divert ASAPP contracts and referrals to ABC Therapy, the company that Defendants Serrano, Worrell, and Souza established to compete with ASAPP." (Compl. ¶6). The complaint further provides that in relation to those alleged acts, Harshe contacted Verizon, began reviewing ASAPP's security footage, logged into the ASAPP corporate email accounts assigned to Worrell and Sousa, and contacted the police. (<u>Id.</u> at ¶¶ 48-53). These allegations form the basis for a number of ASAPP's claims including its claims that Worrell and Souza violated the ECPA and the SCA, and analogous state statutes. (<u>See</u> <u>Id.</u> at Counts V-VIII). The Complaint further discusses that Harshe again contacted the police about an allegedly stolen computer, and that she terminated Defendants before the Hammonton police as a result of their allegedly taking corporate property and breaching their duties of loyalty. (<u>Id.</u> at ¶ 52).

Likewise, the complaint in <u>Worrell I</u> alleged that Harshe violated the ECPA and the SCA when she "accessed the Yahoo email accounts without Plaintiff's authority or consent in an effort to gain advantage in the negotiations and to obtain attorney client communications." (<u>Worrell I</u> Amended Compl.¶ 10). The third count in <u>Worrell I</u> further alleged libel and slander claiming Harshe "told a representative of TD bank . . . that plaintiffs had stolen things or monies from <u>the company</u>"; telephoned Serrano "and

told her that both plaintiffs embezzled funds <u>from the company</u>"; and "told the Hammonton Police Department that plaintiffs were guilty of vandalism, conversion and theft."  (<u>Id.</u> at ¶¶ 40-43 (emphasis added)). Finally, Count 4 in <u>Worrell I</u> alleges violations of New Jersey's Identity Theft Statute based on Harshe's contact with Verizon to inquire about deactivating phones. (<u>Id.</u> at ¶¶ 45-52). It is, therefore, evident on the face of the complaints alone that the persons and evidence necessary to maintain both <u>Worrell I</u> and <u>Worrell III</u> are the same; "[t]he fact that several new and discrete [related] events are alleged does not compel a different result. 'A claim extinguished by res judicata includes 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, *or series of connected transactions,* out of which the action arose.' " <u>Elkadrawy v. Vanguard Grp., Inc.</u>, 584 F.3d 169, 174 (3d Cir. 2009) (emphasis in original) (quoting Restatement (Second) of Judgments § 24(1) (1982)).

ASAPP's claims are also precluded by the Mediation Agreement. As previously stated, there is no dispute that Worrell, Souza, and Harshe engaged in Mediation during <u>Worrell I</u> to resolve the outstanding business disputes between these parties and terminate the existing partnerships in shared entities.  [Dkt. No. 30-3 ¶ 34; 20-7 ¶ 7].[4] As a result, the parties entered into an enforceable Mediation Agreement settling their differences. Thus, the express terms of the Mediation Agreement will determine the

---

[4] Harshe attempts to separate ASAPP from the entities and disagreements at issue in the 2016 Mediation, again stressing that ASAPP was not a party. The Court, as detailed above, finds that Harshe is in privity with ASAPP. Moreover, the language of the Mediation Agreement also forecloses such an argument. The agreements first term indicates the parties interest in ASAPP and indicates the company must have been at issue in the mediation. Indeed, the other entities undisputedly involved in the mediation are related to ASAPP—RAP provides management services to ASAP, PLG owns ASAPP's building. The fact that ASAPP is a non-profit is inapposite. The record shows that Harshe and ASAPP's interests were the same.

extent of preclusion. See Toscano v. Connecticut Gen. Life Ins. Co., 288 F. App'x 36, 38 (3d Cir. 2008).

The terms of the Agreement contemplate the issues here by directly addressing that "[t]here is no non-compete nor non-solicitation agreement between or among any of the parties," and that Harshe would not "tortuously interfere with Worrell's and Souza's relationship with Lillian Serano." (Mediation Agreement ¶¶ 10-11 (emphasis added)). In the words of Judge Porto, the "mediation agreement . . . acknowledged the [Worrell and Souza] were going to set up a competing firm . . . ." And all parties agreed to execute mutual releases based on these terms. Now, ASAPP comes before this Court with claims against that competing firm, Serrano, and Worrell and Souza**,** alleging that that the parties conspired and solicited employees from ASAPP, breaching their duty of loyalty and interfering with ASAPP's economic advantage and contractual relations. ASAPP further claims that ABC Therapy has engaged in unfair competition and been unjustly enriched. (See Compl. Counts X, XII-XVI). The Court cannot permit Harshe to make an end-run around the Mediation Agreement by bringing these claims, as the related entity. Accordingly, the Court finds that such claims are precluded by the terms of the Mediation Agreement.[5]

Moreover, despite Plaintiff's persistent suggestion that ASAPP was not involved in Worrell I or the mediation, Harshe was fully aware that the non-profit ASAPP was "at the center" of these litigations. [Dkt. No. 20-16, Ex. N, p. 12].[6] Indeed, ASAPP does not

---

[5] When given the opportunity to further explain why the pending claims before this Court were not precluded by the Mediation Agreement, Plaintiff focused on the difference in parties in the first litigation and this matter. [Dkt. No. 74].

[6] The Court also notes that while Plaintiff points out that ASAPP is not mentioned by name in Worrell I, a comparison of the Worrell I complaint and the Worrell II complaint, along with

distinguish the cause of actions so much as it argues that defendants' reliance on the Mediation Agreement is misplaced. ASAPP contends that "much of the wrongdoing alleged in ASAPP's complaint was not discovered—and in many cases did not even occur—until after the May 2, 2016 Worrell/Souza/Harshe Mediation Agreement."  [Dkt. Nos. 75, 76]. The record, however, shows that substantial events alleged as wrongdoing were discovered prior to the May 2, 2016 mediation. (See Compl. ¶¶ 40-55). Harshe was aware as early as April 27, 2016, that Worrell and Souza were allegedly removing corporate property, namely a computer. Admittedly, issues surrounding this computer, and its contents, were discussed in mediation and addressed in the agreement: "Worrell and Souza will return to Praj all corporate codes, passwords, files, email addresses less any personal information therein contained, to the extent possible by May 6, 2016." (Mediation Agreement ¶ 6; Dkt. No. 20-14, 41:1-12).

To the extent that wrongdoing did occur after the Mediation Agreement was signed, Harshe still knew of the alleged wrongdoings months prior to her Answer in Worrell I (filed on May 2, 2017), which asserted no counterclaims. Federal Rule of Civil Procedure 13(a) provides that:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

(emphasis added). Accordingly, "[f]ailure to assert a counterclaim that is made compulsory by Rule 13(a) precludes a later action . . ." 18 C. Wright A. Miller & E. Cooper, Fed. Prac. & Proc. Juris. § 4414 (3d ed. 2020). In "many cases" such as the one

---

additional documents in the record, reveals that when Worrell I's complaint refers to the "company" it is referring to ASAPP.

before this Court, where the former defendant becomes the plaintiff (here, by way of privity) "the compulsory counterclaim provisions of Civil Rule 13(a) supersede other principles of preclusion." Id.; see also Tagayun v. Citibank, N.A., No. CIV.A. 05-4302, 2006 WL 5100512, at *6 (D.N.J. June 9, 2006).

Rule 13(a)'s purpose is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." Southern Construction Co. v. Pickard, 371 U.S. 57, 60, 83 S. Ct. 108, 9 L.Ed.2d 31 (1962). The Court Finds that Plaintiff's claims against Defendants are further barred by Federal Rule 13(a).

In deciding whether a counterclaim is compulsory under Rule 13, courts ask, "whether the counterclaim 'bears logical relationship to an opposing party's claim.'" Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389 (3d Cir. 2002) (quoting Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978)). The Third Circuit has held that the term "opposing party" used in Rule 13, "should include parties in privity with the formally named opposing parties. . . . The rationale is that if the adjudication of an action is binding on parties in privity with the parties formally named in the litigation, then any claims against parties in privity should be brought in the same action lest the door be kept open for subsequent relitigation of the same claims." Id. (citations omitted). The Circuit has further explained:

> a counterclaim is logically related to the opposing party's claim when separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues  . . . the doctrine of res judicata compels the counterclaimant to assert in the same suit . . . .

Great Lakes Rubber Corp. v. Herbert Cooper Co, 286 F.2d 631, 634 (3d Cir. 1961).

Not only do the claims addressed above bear a logical relation to those asserted in Worrell I, but as do Plaintiff's remaining claims. Those claims allege violations of the CFAA, conspiracy to violate the CFAA, violation of the New Jersey Computer Related Offenses and conspiracy to violate the New Jersey Computer Related Offenses, violation of the New Jersey Trade Secrets Act, and misappropriation of confidential Information. (Compl. Counts I-IV, IX, XI)—all of which stem from Defendants' alleged use of information obtained through ASAPP's computer, email, fax and solicitation of ASAPP employees/independent contractors. Separate trials would undoubtedly involve a substantial duplication of effort and time by the parties and the courts. Even viewing all facts in a light most favorable to Plaintiff, the Court finds that Harshe—in privity with ASAPP—should have asserted its present claims as counterclaims in Worrell I. Failure to do so precludes this separate action under Rule 13(a). See Tagayun v. Citibank, N.A., No. CIV.A. 05-4302, 2006 WL 5100512 (D.N.J. June 9, 2006) (finding that plaintiff and defendant in previous state court matter were in privity with the additional parties in the federal court matter; and res judicata precluded the matter before the federal court because plaintiff was aware of, and raised the same violations of law as defendant in the previous state court action, that should have been raised as compulsory counterclaims).

In sum, the Mediation Agreement and the present complaint, together, reveal "that the factual underpinnings, the theory of the action, and the relief sought, are nearly identical to those issues previously resolved." Toscano v. Connecticut Gen. Life Ins. Co., 288 F. App'x 36, 39 (3d Cir. 2008). To be sure, "[f] litigation is not a *repechage* round for losers of earlier contests, or for those who overslept and missed the starters' gun." Hamburg Music Corp. v. Winter, No. 04-2738, 2005 WL 2170010, at *4 (3d Cir. 2005) (alteration in original) (quoting River Park, Inc. v. City of Highland

Park, 23 F.3d 164, 167 (7th Cir. 1994)). Therefore, the Complaint in this case against Worrell and Souza, and their privies, is barred.

IV.    <u>Conclusion</u>

For the forging reasons, the Court will grant Defendants' Motion to Dismiss the Complaint or in the Alternative for Summary Judgment [Dkt. No. 20].

An appropriate order shall issue.

Dated: December 7, 2020

_____/s/ Joseph H. Rodriguez_____ _____<br>Hon. Joseph H. Rodriguez,<br>UNITED STATES DISTRICT JUDGE